# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHELE SANTOPIETRO,

    Plaintiff(s),

v.

LAS VEGAS POLICE DEPARTMENT OFFICERS C. HOWELL (BADGE 9634), et al.,

    Defendant(s).

2:12-CV-1648 JCM (PAL)

## ORDER

**I.  Background**

Presently before the court is a motion for partial summary judgement filed by plaintiff Michele Santopietro ("Santopietro") (doc. #45) and a motion for summary judgment filed by defendants Clayborn Howell ("Howell"), Christine Crawford ("Crawford"), and Francisco Lopez-Rosende ("Lopez") (collectively "officers") (doc. #44). Both sides have filed oppositions (doc. #49; doc. #50), and both sides have replied (doc. #52; doc. #54).

The material facts in this care are undisputed.  Plaintiff Santopietro works as an actor in various media and occasionally acts as a street performer on the Las Vegas Strip.  On May 28, 2011, Santopietro and her friend, fellow street performer Lea Patrick ("Patrick"), were arrested on the Las Vegas Strip by three police officers, defendants Howell, Crawford, and Lopez.  The officers were working a plain-clothes Strip enforcement assignment when they came upon Santopietro and Patrick

**James C. Mahan**
**U.S. District Judge**

1  working together in their "sexy cop" costumes. Santopietro and Patrick were posing with
2  pedestrians on the Strip in and accepting tips in exchange.

3  Howell asked Santopietro and Patrick how much it cost to have a photo taken, and
4  Santopietro replied that the picture was free, and that they posed for tips. Specifically, Patrick stated,
5  "We pose for tips. Is that okay?" Howell posed for a picture with Santopietro and Patrick and then
6  began to walk away without offering payment. Patrick stated "don't forget the tip," and Howell
7  responded that he would not tip them. Patrick then stated "you said you would tip". Patrick said that
8  if Howell was unhappy with the photograph that Crawford, who had taken the photograph, should
9  delete it. After this statement, Crawford approached Santopietro and asked what she was going to
10 do if Crawford did not delete the picture. Santopietro said that she was not going to do anything.
11 Patrick told Howell that Howell had entered into a verbal contract with her to give a tip.

12 Howell approached Patrick and told her that she could not demand a tip. Patrick responded
13 by agreeing that she could not demand a tip, and stated that she was simply telling Howell that he
14 had agreed to tip her. After this exchange, Howell showed Patrick and Santopietro his badge and
15 explained that he was a plain-clothes police officer. The officers arrested Patrick and Santopietro
16 for "doing business without a license" in violation of Clark Cnty. Muni. Code § 06.56.030. The
17 charges against Santopietro were ultimately dropped.

18 Santopietro filed this lawsuit seeking civil damages for violations of her constitutional rights
19 stemming from what she believes was an unlawful arrest.

20 **II.   Discussion**

21 **A. Standard of Review**

22 The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
23 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
24 show that "there is no genuine issue as to any material fact and that the movant is entitled to a
25 judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is
26 "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
27 323–24 (1986).

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

1  477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
2  inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
3  merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
4  249–50.

**B. Analysis**

I. Probable Cause

"[T]he question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment." *Id.*

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The plaintiff bears the burden of establishing the absence of probable cause. *Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008).

The officers had probable cause to believe that Santopietro and her partner were doing business without a license. The officers were working a Strip enforcement assignment, and as part of that assignment the officers had been engaging with street performers to ensure that they were not demanding tips. After taking a picture with Santopietro and Patrick, Patrick engaged in exactly the kind of conduct that the officers were on the lookout for.

Patrick demanded a tip from the officers three separate times. First, she asked the officer to not forget to tip. Next, she stated that the officer had indicated he would tip her. Finally, she demanded that the officer delete the picture that had been taken, and she asserted that the officer had entered into a verbal contract with her and that he was required to tip her.

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

Only at this point, after Patrick asked for a tip three times in an increasingly aggressive manner and demanded that the officer delete the picture if no tip was given, did the officers determine that Patrick, and by association, Santopietro were no longer acting as street performers, but that they were conducting business without a license as prohibited by Clark Cnty. Muni. Code § 6.56.030. This provision provides, in part:

> (a) It is unlawful for any person in the unincorporated areas of the county to operate or conduct business as a temporary store, professional promoter or peddler, solicitor or canvasser without first having procured a license for the same as hereinafter provided, or conduct business through the use or employment of peddlers, operators, managers, employees, solicitors or canvassers without first having procured a license as hereinafter provided.

Santopietro contends that the depositions of the officers show that they do not have a meaningful understanding of the law that Santopietro was arrested for violating. Santopietro asserts that the officers could not pinpoint the exact time that the street performers stopped engaging in performing and started conducting business without a license. This fact, claims Santopietro, shows that the officers did not have probable cause to arrest her. Indeed, The Ninth Circuit has found that "reasonable suspicion cannot be established by a mistake of law." *Beier v. City of Lewiston*, 354 F.3d 1058, 1066 (9th Cir. 2004).

In examining cases where probable cause was lacking due to a mistake or misunderstanding of law, the mistakes of law are different in character than in the present case. *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (holding that there was no reasonable suspicion to allow for traffic stop when officer mistakenly believed that registration sticker had to be affixed to rear window when the law did not require specific placement of registration sticker); *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000) (holding that reasonable suspicion did not exist where a police officer mistakenly believed that Michigan requires two license plates rather than one).

In *Lopez-Soto* and *Twilley* police performed arrests based on conduct that was not actually prohibited. If the law requires only one license plate and an individual is arrested for not having two license plates, there is clearly an absence of probable cause that a crime has been committed. The same character of mistake did not occur in the instant case. The officers in this case were not under

James C. Mahan
U.S. District Judge

- 5 -

a mistaken belief that a license was required when there was no licensing requirement. Rather, due to the officers' overly restrictive reading of the provision, the arrest was not performed at the initial moment in which probable cause existed.

The way that Clark Cnty. Muni. Code § 6.56.030 is written, the offense of doing business without a license was completed as soon as Santopietro and her partner offered to perform a service in exchange for compensation. The officers could have arrested Santopietro as soon as the offer was made, but due to their misunderstanding, the police did not perform the arrest until a tip was demanded several times.

The fact that the police believed that a violation of Clark Cnty. Muni. Code § 6.56.030 required both the offer of a service in exchange for payment and the act of demanding payment does not mean that the officers lacked probable cause. The police believed that a violation of the law required more than it actually did, and both the actual requirement and the officers' perceived requirement were met. While the officers did not know the exact moment that the provision was broken, the officers did have a general understanding that it was against the law for a street performer to demand tips.

"Because probable cause must be evaluated from the perspective of prudent [people], not legal technicians, an officer need not have probable cause for every element of the offense." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (internal quotation marks omitted). It is reasonable for an officer to believe that tipping has become involuntary (and thus coerced) when a street performer reminds someone to tip, demands a tip, and asserts that a verbal contract exists that necessitates payment of a tip. Additionally, it is reasonable for an officer to believe that the performer is providing an immediate service (posing for a picture) for which compensation is required (in the form of a mandatory "tip") under these circumstances. While the officers were not aware of the minute details of every element of statute prohibiting doing business without a license, they did understand the type of conduct prohibited by the law, and they did arrest with probable cause based on that knowledge.

. . .

1  Santopietro additionally contends that a memorandum signed by LVMPD during a previous
2 lawsuit stipulates that street performing, which includes the non-coercive solicitation of tips does not
3 violate any section of Clark Cnty. Muni. Code. Santopietro further contends that the officers all agree
4 that Santopietro and her partner did not do anything "coercive" in attempting to collect a tip from the
5 officers. Santopietro states that this admission shows that the officers arrested her for being a street
6 performer.
7  Once again, the officers did not arrest Santopietro because she was a street performer who was
8 soliciting tips in a non-coercive manner. Santopietro was arrested because she and her partner were
9 engaging in activity that gave police officers probable cause to believe that Clark Cnty. Muni. Code
10 § 6.56.030 had been violated. While the police did not state that the solicitation of tips had become
11 "coercive," they did believe that the performers' actions demonstrated that a tip was mandatory, and
12 thus a violation of Clark Cnty. Muni. Code § 6.56.030.
13  "If an officer has probable cause to believe that an individual has committed even a very
14 minor offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."
15 *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Because the officers had probable cause to
16 arrest Santopietro, they were able to arrest her without violating her constitutional rights.
17  Santopietro's claims fail because she is unable to show that a right secured by the Constitution
18 was violated by the arrest. Because the officers had probable cause to make an arrest, no
19 constitutional rights were violated during this incident.
20  Accordingly,
21  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Santopietro's motion for
22 partial summary judgment (doc. #45) is DENIED.
23 . . .
24 . . .
25 . . .
26 . . .
27 . . .
28

James C. Mahan
U.S. District Judge

- 7 -

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendants' motion for summary judgment (doc. #44) is GRANTED.  The clerk is instructed to enter judgment accordingly and close the case.

DATED June 16, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**